[PHILADELPHIA, FEBRUARY 21, 1834.]

## RHOADS *against* GAUL et al.

### IN ERROR.

A book, purporting to be a book of original entries, containing entries of the sale of goods, made when the goods were ordered, but before they were delivered, is not competent evidence of goods sold and delivered. Nor are arbitrary signs or marks affixed to the entry of each article, not for the purpose of charging the defendant, but of informing the porter so as to prevent a second delivery of a similar article, are not evidence of delivery, particularly when it appears that the signs or marks, were not always made by the person who made the charge, nor by the plaintiff, or a clerk in his employment.

ON a writ of error to the District Court for the City and County of *Philadelphia,* it appeared, that this suit was brought by the defendants in error, *Martin* and *William Gaul,* surviving partners of the firm of *Frederick Gaul & Sons,* against the plaintiff in error, *Daniel J. Rhoads,* for goods sold and delivered, to which the defendant below pleaded *non assumpsit* and payment.

From the bill of exceptions returned with the record it appeared, that on the trial the plaintiffs, preparatory to offering in evidence their book of original entries, called a witness who swore that the book produced was the book of original entries of the plaintiffs': That certain entries in it charging the defendant, were in the handwriting of a person who had formerly been in the employment of the plaintiffs, but was then not within the jurisdiction of the court, and that the entries were made when the goods were ordered.

One of the plaintiffs was then sworn, who testified that the book produced was their book of original entries: That the entries were made before the delivery of the goods: That the plaintiffs had a sign by which the delivery was marked: That the person who made the entries generally, but not always, made the sign: That it was made by the person who happened to be in the counting house: That the entries were always made at the time of the sale, and if the goods had not been delivered, the entries would have been erased: That the sign was a tick made thus, *V* : That the tick was merely for the direction of the porter, to prevent a second delivery of the article sold: That the tick was generally made by the person who saw the goods sent by the porter, and that he could not say by the appearance of the ticks, by what hand they were made. The witness then proved

(Rhoads *v.* Gaul et al.)

the entries in his own hand writing.   Upon the preliminary evidence thus given the plaintiffs offered the book in evidence, which was objected to by the defendant's counsel, but the court overruled the objection, and sealed a bill of exceptions.

After having proved by the oath of the other plaintiff, the entries made by him, and by another witness the value of certain articles delivered to the defendant, and given in evidence two letters from the defendant to *F. Gaul & Sons,* one of them dated *Pottsville, May* twenty-first, 1829, and the other, *August* fifth, 1829, the plaintiffs called a witness, who swore, that he was well acquainted with the manner in which business was conducted in the plaintiffs' counting house, and with the manner in which the entries were made in the book which had been given in evidence : That when a dot preceded the figures in either of the columns in the left hand side of the page, and two dots succeeded it, the sale was of so many barrels of porter or ale as the figures indicated, and when three dots followed the figures, they denoted the sale of so many hogsheads of porter or ale.   When this evidence was offered, the defendant's counsel objected to it, but the court having permitted it to be given, a second bill of exceptions to their opinion was tendered by the defendant's counsel, and sealed by the court.

The book above referred to, was exhibited to the Supreme Court, in which it appeared that the entries were made thus :

| .3.. | .3.. | Daniel J. Rhoads, *V* | . | . | . | . | 36 |
| .3.. | .3.. | Daniel J. Rhoads, *V* 20 Groce corks 2 B C | | | | | |
| 2.. | 2.. | Danl. J. Rhoads, *V* | . | ○ | . | . | 48 |

The jury found a verdict for the plaintiffs, on which judgment was entered, and the defendant took out a writ of error.

The errors assigned in this court were,—

1. That the entries were made at the time the orders were received, and not at the time of the sale and delivery of the articles said to have been sold.

2. That the supposed sign of the delivery was not proved by any person.

3. That there are no charges in the book against the defendant below, of the sale and delivery of goods to him, but marks only, which are not intelligible to persons acquainted with business.

*Bouvier,* for the plaintiff in error.—By the common law, books are not evidence unless proved by the oath of some other person than the party who offers them.   Their admission, supported by the suppletory oath of the party, arose from a supposed necessity, and it has been " lamented that it is necessary in this country to resort to evidence of this kind, as it opens a door and furnishes a temptation to much mischief.   When a book is offered in evidence, it ought to appear suited to aid the oath of the party by whom it is produced,

and to fortify and confirm it." Per SEDGWICK, J., 2 *Mass. R.* 217. The principal evidence is the oath of the party, and the book a mere auxiliary in corroboration of it. 12 *Johns. R.* 464. If, as has been said, the courts of *Pennsylvania* have adopted the civil law, it would have been well, in order to prevent abuses, to have adopted its provisions on the subject, and required the books of merchants and others to be properly kept, and verified by a proper officer at least once a year. To entitle a book to be read in evidence to prove the sale of goods, it must be proved that it is a book of original entries, and that the charges were made at or near the time of the sale and delivery of the articles sold. In support of this position he cited— *Poultney* v. *Ross,* 1 *Dall.* 239. *Tenbroke* v. *Johnson,* 1 *Coxe R.* 288. *Wilmer* v. *Israel,* 1 *Browne's R.* 257. *Sterrett* v. *Bull,* 1 *Binn.* 234. *Curren* v. *Crawford,* 4 *Serg. & Rawle,* 3. *Rogers* v. *Old,* 5 *Serg. & Rawle,* 404. *Summers* v. *M'Kim,* 12 *Serg. & Rawle,* 411. *Cooper* v. *Morrel,* 4 *Yeates,* 341. *Smith* v. *Lane,* 12 *Serg. & Rawle,* 80. *Juniata Bank* v. *Brown,* 5 *Serg. & Rawle,* 226. 1 *South.* 370. *Thompson* v. *M'Kelvey,* 13 *Serg. & Rawle,* 126. *Baisch* v. *Hoff,* 1 *Yeates,* 198. *Vance* v. *Feariss,* 1 *Yeates,* 321. *Wright* v. *Sharp,* 1 *Browne's R.* 344. The book in question was a mere order book. If the plaintiffs found they could not supply the whole order, they furnished what they could, and charged it in the day book, and the charges in this book became of no consequence. Entries in a regular book of original entries, are undoubtedly *prima facie* evidence of delivery, but here it appears a certain sign was made, which it is alleged was the evidence of delivery. It was necessary, at least, to prove who made that sign, of which there was no evidence. Again, there was no charge of *goods* in the book, nor does it appear from the book whether the items it contains were intended for debits or credits. As the books of a party are admitted from necessity, it was his duty to do all in his power to make them intelligible, and if the plaintiffs chose to make a book of riddles, they cannot be allowed to explain it to their own advantage. There are several columns on the left side of the page, and figures with one or more dots next to each are made in these columns. There is no explanation in the book itself, from which it can be known, whether porter, beer or ale is intended to be charged, nor indeed any other article of merchandize. Another objection to such a mode of keeping a book is, that it is open to fraud and liable to mistakes. One dot more or less, according to the evidence, changes the quantity of goods said to have been sold, and it is easy to add or subtract these dots intentionally, or to make mistakes in entering them, and in either case injustice is done. Besides, not being understood by persons in the trade, it is impossible to check errors. It is not like keeping a book in a foreign language, which is understood by those acquainted with the language, or like the books of some merchants, which can be explained by men in the same business. The plaintiffs having chosen to make a mystery of their books, the inconveniences of them should not be visited on others.

(Rhoads *v*. Gaul et al.)

*Grimshaw*, for the defendants in error, contended that this book is such as the law recognizes. In mercantile transactions strict evidence is not required. *Riche* v. *Broadfield*, 1 *Dall.* 17. But even if it were required, and this book should not be held to be good evidence, still the court will not reverse a judgment rendered after a fair hearing, where the jury were perfectly satisfied, if there was other testimony which would authorize their verdict. Here are two letters by which the plaintiff in error orders these goods. This book was sufficient, because the entries were made at the time of the sale, and the entry is evidence of sale and delivery, independent of the sign or tick, which was merely surplusage, or made to prevent a second delivery, and it need not be proved who made it. As to the manner of making the charges, it is as clearly understood as the charges made by an apothecary, which are generally in Latin, and by signs of ounces and drachms; or by grocers, whose charges are abreviated; and so are those of a dry goods merchant, and indeed the charges of most persons in trade. Tallies and other symbols are used and are good evidence. 1 *Phil. Ev.* 490. 6 *Ves. Jr.* 397. 5 *Co.* 68. *Ingraham* v. *Bockius*, 9 *Serg. & Rawle*, 285. *Arnold* v. *Anderson*, 2 *Yeates*, 93.

The opinion of the court was delivered by

Gibson, C. J.—A shop book is competent as a registry of the sales made in the course of the business; and, in the nature of things, no true registry can be made of a fact that has not happened. If it were registered as having already happened, under a confident expectation that it would happen, the registry was false when it was made, and being false then, it is false still. The entries, therefore, ought to be made at the delivery of the goods, or immediately afterwards; and this is what is meant in *Curren* v. *Crawford*, 4 *Serg. & Rawle*, 3, by saying they ought to be made at or *near* the time. It is an undisputed part of the present case, that the charges were made when the goods were ordered and before they were sent, so that the entries are clearly incompetent standing by themselves: and what supplemental or independent fact is there to prove the delivery, which is as indispensable to charge the customer as the sale itself? It is that an arbitrary mark or sign was separately affixed to the entry of each article; *not, however to charge the defendant,* but to inform the porter so as to prevent a second delivery. According to *Rogers* v. *Old*, 5 *Serg. & Rawle*, 404, in which an entry not purporting on its face to charge the party was held to be inadmissible, the purpose of the marks is conclusive of their incompetency; for it must be indifferent whether there be no apparent intent to charge at all, or an apparent intent rebutted by the evidence adduced to explain and support it. Independent of this, it is decisive that the marks were not always made by the hand that made the charge: and that no witness proves them to have been made in this instance, by the plaintiff

(Rhoads *v.* Gaul et al.)

or a clerk in his employment. If, then, we treat the marks as the substantive evidence of delivery, dismissing all beside, except so far as it serves to explain the meaning of the marks, we look in vain for proof of their authenticity. In questions of this sort, it is necessary to show, not only the originality of the book, but the genuineness of the writing, in order to raise a presumption that the transaction was in the usual course of the business. Such is the principle of *Sterrett* v. *Bull*, 1 *Binn.* 234, by which it was determined that entries in the hand-writing of a clerk must be verified by his oath, or proof be made that he is dead or out of the jurisdiction. What we have here as evidence of delivery is a set of arbitrary signs, intelligible but to those who were in the service of the plaintiff, and unsupported by the oath of him who made them; consequently they ought not to have gone to the jury.

Judgment reversed and a *venire de novo* awarded.