# Keim *against* Rush.

When goods are sold to be delivered at a distance, the proper time to make the entry in the book is when they are loaded and started; and entries thus made are competent evidence to prove the sale and delivery.

The books of an iron-master are not competent evidence to disprove the fact of a sale and delivery of iron to him.

ERROR to the Common Pleas of *Berks* county.

This was an action of *assumpsit* for goods sold and delivered by John Rush against Keim, Whitaker & Co. The plaintiff having been sworn, said: " This is my book of original entries. These entries are in my handwriting, made at the time they bear date. I had my forge in Hereford township, and lived there. The defendants lived in Reading, and had their rolling-mill there, about 21 miles off. I made the entries at the forge. When the wagons were loaded, and the teams started, then I went and made the entries. It was my team and carter."

The plaintiff then offered the book and entries in evidence. The defendants objected, because the entries were made before the sale and delivery, and not at the proper time; because the charges in the book offered in evidence were not against the defendants, and because the entries were altered and erased in a material part. In support of the last ground, the testimony of Patrick Toland was read as follows: I was at Keim's, Whitaker & Co. in 1836, in April. Was not absent from that time during the year. I was there on the 9th and 10th of August 1836, and on the 11th and 12th of August 1836, (looking at his book). Blooms were delivered on the 4th, and on the 12th of August 1836, from Mr Rush; and none between these dates. The amount delivered on the 12th was 1 ton, 9 hundred, 1 quarter and 5 pounds. When Mr Rush brought his book there to show the delivery, it had the number of pieces. From the number of pieces I undertook to show him he was wrong (he had eighty odd), as they would not correspond with the weight, and would overrun. He said he would go home and inquire with his men; they had chalked it down on the beam or somewhere about the forge, where he could see it. It was suggested to him that what he claimed might have gone to Phœnixville. He said

v. — 48                        2 q *

[Keim v. Rush.]

it might be so; he would inquire when he got home. He came there again several times. I saw his book the second time, when it appeared evident it was altered. Can't recollect what reasons he gave for the alterations; the number of pieces were altered. The price of blooms was $87.50 on the 11th and 12th August 1836. Our weight did not correspond with Mr Rush's. We generally gave bills when we were asked. Whether we gave a bill at this time I can't remember. When I say there were no blooms delivered between the 4th and 12th of August 1836, I speak from the entries of my books and my memory. I can't say certainly at which time I noticed the alteration in Mr Rush's book."

The court overruled the objections and admitted the book in evidence, and the entries to be read: to which decision the defendants excepted.

The defendants offered in evidence their book kept at the rolling-mill of all iron delivered there, by which book it appeared no iron or blooms were delivered by the plaintiff between the 4th and 12th of August 1836; accompanied by proof that the entries were made by Patrick Toland, whose business it was to enter all the iron delivered at the rolling-mill; that Toland was at the rolling-mill all the time, in August 1836, and that he kept the books correctly, and that no blooms were delivered by Rush between said 4th and 12th of August 1836; to which the plaintiff objected, and the court rejected the book, but allowed Toland to prove that he was at the defendants' iron-works in the month of August 1836, and that the plaintiff did not deliver the blooms for which this suit was brought. To this decision the defendants excepted.

*Smith*, for plaintiffs in error, contended that books of original entry were only evidence of a sale and delivery when the delivery was actually made to the vendee; and not when the parties were to depend upon the uncertainty of any delivery at all, and when the vendor could not know whether the delivery was made. 4 *Serg. & Rawle* 3; 16 *Serg. & Rawle* 133; 4 *Rawle* 404; 2 *Watts & Serg.* 19.

*Hoffman*, contra, referred to 5 *Serg. & Rawle* 404; 1 *Watts & Serg.* 356.

PER CURIAM. — The case does not call on us to decide whether the property in the blooms passed by the delivery to the carter. That question might be a difficult one; though, it is very clear, the property would have passed by a delivery to a general carter, or one employed by the vendee. The blooms were sent by the vendor's own wagon, and the vendor made the entries in the book as soon as they were loaded and started. When else ought he to have made them? Not, say the vendees, till the return of the carters had made it certain that the blooms had been received.

[Keim v. Rush.]

But that would have made the fact of delivery no more certain than it was made by the presumption, founded in the usual course of events, that they would reach the vendees in the ordinary course.   The competency of entries in day-books is based on the personal knowledge of him who makes them, that the fact stated is true, not on hearsay knowledge which he may have happened to acquire from another.   If the delivery is to be proved by the story of the carters, the carters themselves ought to be called; but it would be idle to call them; for they are not supposed to know the quantity delivered or the times of delivery; nor could their testimony always be had.   The book, then, kept in the usual order of such transactions, was properly received.   Nor does this view of the case conflict with *Rhoads* v. *Gaul*, (4 *Rawle* 404), in which the goods had been booked before they were sent.   Here they were booked at the instant; and that was undoubtedly the proper time.   It is scarce necessary to say the vendees' book was not admissible.

Judgment affirmed.