## Baker's Estate

*Robert Ruppin, J. H. Geisenberger, F. Lyman Windolph,* and *James L. Rankin,* for exceptants.

*K. L. Shirk,* contra.

APPEL, P. J., August 12, 1942.—Exceptions filed to the adjudication of this court, and which were not disposed of at argument court, will be discussed in six groups. Preliminarily, however, some general observations should be made as to the business operations of decedent which show how the various questions which are now before the court have arisen.

Decedent was a manufacturer of hosiery. He came from Philadelphia to Ephrata, this county, six or seven years ago, where he was affiliated with the Super Tex Hosiery Mills until that concern was taken over by another company in bankruptcy proceedings. He did not succeed to the business or acquire any of the machinery of the Super Tex company. Thereafter, decedent on his own account became a manufacturer of ladies' full-fashioned hosiery at Ephrata. For this purpose he acquired machinery and equipment; employed laborers; bought materials and supplies; engaged other manufacturers, to whom he shipped or ordered to be shipped materials to be manufactured into articles for him; rented real estate from Ira E. Fasnacht; bought real estate upon which he erected a factory building, making the necessary and incidental contracts therefor, out of which arose two mechanics' lien claims which are hereinafter discussed; and borrowed money, especially from The Farmers National Bank of Ephrata, the repayment of which was partially secured by assignment of life insurance policies, others by conditional sales agreements, and a large part of which was unsecured. He also became indebted to a large number of merchandise creditors, of whom Ewing-Thomas Corporation was the largest, Paul Clayton's trustees the second largest, and Samuel Kasson Company the third largest. He died on December 21, 1940, intestate and insolvent. Thereafter The Farmers National Bank of Ephrata, which was his largest secured and unsecured creditor, became the administrator of his estate, sold the factory real estate under an order of this court, liquidated the

personal estate, and filed its account, which, subject to exceptions, came before this court for audit. At this audit preferred and common claims were presented and allowed to an amount of $48,186.29, and the funds awarded by way of distribution in the adjudication were $14,228.71—common claims being allowed a dividend at the rate of 20.5197 percent. Exceptions to this adjudication are now before the court for determination. . . .

II. Accountant's exception to the reduction of its compensation and accompanying surcharge in the sum of $120.13.

In the account filed the administrator took credit for the payment of accountant's compensation for $923.94, to which exceptions were filed. The account was incorrectly stated in that the proceeds of the sale of real estate sold under the order of court, and the expenses in connection therewith, and items properly chargeable against the proceeds of said sale were mingled with the receipts from the liquidation of the personal estate and the payments therefrom. The real estate was sold, subject to the payment of a mortgage of $2,000, for the sum of $3,025, which appears to be ample to pay items which should have been properly charged against a real estate account, as well as two mechanics' lien claims filed against said real estate. For this reason we have excused the irregular form of the account as filed. The total charges in the account amount to $18,478.77, of which $3,025 are the proceeds of the real estate and $15,453.77 are items of charge of the personal estate. The accountant took credit for commissions at the rate of five percent, amounting to $923.94, on the whole amount of charges in the account. For many years in this jurisdiction, in the absence of proof of extraordinary services rendered by a fiduciary in connection with a sale of real estate, commissions have been usually claimed and allowed at the rate of 2½ percent on the proceeds of sale of such real estate. No

testimony has been offered or sufficient reason shown to this court why the usual local rate of such commissions on the proceeds of the sale of real estate should be exceeded in this estate. Such commissions, therefore, at the rate of 2½ percent on the $3,025 should be claimed and allowed, amounting to the sum of $75.63. In the adjudication the accountant was erroneously surcharged in the amount of $120.13, to which the accountant has excepted. This exception to the surcharge of the $120.13 is sustained to the extent that the amount of the surcharge is reduced to the sum of $75.62, which the court finds the accountant overcharged by way of commissions on the proceeds of the sale of real estate sold.

III. Exception to award of $721.08 to A. H. De Long on mechanic's lien claim.

This claim arose for money due from decedent to A. H. De Long for materials furnished and labor performed in doing the electrical work in the construction of the new factory building for decedent, who died on December 21, 1940. The mechanic's lien claim was filed on December 23, 1940, subsequent to the death of decedent, against certain real estate of which decedent died seized, and which later was sold under proceedings had in this court for the payment of decedent's debts by reason of the insufficiency of the personal estate for such purposes. At the time of the administrator's sale of this real estate said mechanic's lien claim was a lien thereon and attached to the proceeds of said sale in the order of its priority. The proceeds of said sale were accounted for and were a part of the funds distributed by the court in its adjudication, whereby said claim was allowed as a preferred claim against said proceeds. No error as to the form of this lien or the validity of the lien and the proceedings thereunder has been shown to this court at the various hearings in the audit of this account. Under the Act of June 4, 1901, P. L. 431, sec. 20, 49 PS §80, a mechanic's lien may be filed against

real estate after the death of the owner: Wagner v. Manbeck, 18 Pa. C. C. 471. See 12 Standard Pennsylvania Practice, 51, sec. 70, and sec. 170, pp. 115, 116. Claimant at the audit was competent to prove his accounts, which the court finds sufficiently and adequately substantiated the correctness and validity of the claim. See opinion of Holland, P. J., in Barclay's Estate, 50 Montg. 81, McCrory v. Safier, 1 Fayette 17, Whalen's Estate, 17 Erie 51. Exceptions to the allowance of this claim must be dismissed.

IV. Exception to the disallowance of the mechanic's lien claim of Irwin W. Groff for $1,099.57.

Irwin W. Groff filed his mechanic's lien claim in the office of the prothonotary, Lancaster County, Pa., on January 21, 1941, against the real estate of which Harold R. Baker died seized, and the proceeds of the sale of which were accounted for in the account which came before this court for audit. This claim was filed for labor and materials furnished in the installation of the plumbing and heating equipment in the erection of a new factory building for decedent, between December 22, 1939, and September 3, 1940, on which date it was alleged that the last work was done and material furnished. The work was done and the materials furnished pursuant to a contract between claimant and decedent, who agreed to pay for the same at the fair and reasonable market value thereof, according to the averments in the claim as filed.

At the audit of the account in this estate claimant produced his accounts which appear sufficient in form to constitute his "book of original entry", which substantiated his mechanic's lien claim as filed. Claimant's book of original entry listed days and dates on which the labor and materials were furnished, and the cost and price thereof, to and including March 17, 1940, and thereafter appear the following items:

"Mar. 30   Plumbing Inspn........$     1.50

Rendered 6/10/40.....$1,076.57
Sept. 3   1—1" Water meter.....   22.50
          To work.............     .50

Rendered 10/1/41.....$1,099.57
1941
Mar. 1   To  drain  heating  and
          Plmb'g .............   1.50 Reg.

$1,101.07"

The mechanic's lien claim appears to have been filed on January 21, 1941, for the amount of the bill rendered October 1, 1940, in the sum of $1,099.57. The last item set forth in the account as of March 1, 1941, "To drain heating and Plumb'g $1.50 Reg.", while unexplained, occurring as it did after the death of decedent, must have been for work done at the request of the administrator and should have been a proper item of administration expenses, and is now allowed as a preferred claim.

Objection was made to the allowance of this claim as a preferred claim for the reason that the last date on which the labor and material for which the lien was filed under the original contract was furnished on March 30, 1940, more than six months prior to the filing of the lien, according to the bill rendered therefor on June 10, 1940, amounting to $1,076.57. The contention was made that the furnishing of the water meter and labor connected with the installation thereof on September 3, 1940, amounting to $23, was not a part of the original contract and did not extend the date on which the lien could be filed beyond September 30, 1940; consequently, no objection was made as to the allowance of the claim as a common claim without preference.

Under section 20 of the Act of June 4, 1901, P. L. 431, 49 PS §80, if the owner should die, the right to file a claim shall remain against the decedent's estate. See Reece v. Haymaker, 164 Pa. 575.

It would appear from claimant's accounts and the testimony of his witnesses that both claimant and decedent considered the original contract of Irwin W. Groff to have been fulfilled as of March 30, 1940, and that the furnishing and installation of the water meter was not included in the original contract. On page 59 of the notes of audit claimant's witness testified: "Baker was figuring on getting a meter direct through a party in Philadelphia, and we were waiting on him to get that meter, and then we would install it, but it got to the point that the borough put pressure on us, and on the strength of that Mr. Groff got a meter and installed it," at the place where temporary provision had previously been made for its installation.

Under section 2 of the Act of June 4, 1901, P. L. 431, 49 PS §21, there can be no doubt that the new factory building of decedent was subject to a lien for the payment of debts due to Irwin W. Groff, the contractor, for the labor and materials involved in this claim, provided the other conditions and provisions of the law relating to the filing of mechanics' lien claims have been complied with, including section 10 of the Act of 1901, 49 PS §52, providing:

"In the case of tenancies or leasehold estates, of alterations and repairs . . . the claim must be filed in the court of common pleas of the county or counties in which the structure or other improvement is situate, within three months after the claimant's contract or agreement is completed; and in all other cases, within six months thereafter . . ."

In Brant v. Hartrick (No. 1), 60 Pa. Superior Ct. 507, where a mechanic's lien was filed by a subcontractor for materials and labor, and apportioned

among three buildings, containing a lump charge, the court held (syllabus) :

"Such a lien is also fatally defective as to the material where it appears that the last item was furnished to the houses more than six months before the lien was filed, although there was another item furnished within the six months, but without anything to show that the material covered by it entered into any of the buildings."

See Houser & Green v. Matsinger, 102 Pa. Superior Ct. 192, for a case where a dispute arose under a lien filed on April 2, 1929, averring that the last work in connection with the contract had been done on October 11, 1928, being for repointing and cleaning brickwork at an expense of $23.76, and the contention was made that claimants did no work on the house in question within six months before the lien was filed, and the court found that the labor done on October 11, 1928, in pursuance of the contract with the owner was done not merely for the purpose of extending the time for filing the lien, but in pursuance of their contract with the owner.

In Miller v. Heath, 22 Pa. Superior Ct. 313 (1903), it was held (syllabus) :

"A mechanic's lien was filed against two adjoining buildings and lots of ground appurtenant thereto. The only item of plaintiff's claim which was furnished within six months prior to the filing of the lien was material for a division fence between the two lots. . . . The houses and fence were not erected under an entire contract, but the owner ordered the particular material which she from time to time required."

The last item of the claim was for material furnished on June 8, 1893. The court, holding that the lien could not be maintained, said (p. 315) : "The transaction involving the material for the erection of the fence was not so connected with the dealings involving the material for the construction of the building as to constitute

one transaction. . . . The fence may have been reasonably necessary to a proper use of the building, and had the lien for the materials which actually went into the building been properly filed, a sale under it might have carried title to the entire lot and all the fences, but it does not follow that the plaintiff has a right to include, in the lien against the house, the value of the materials furnished for and used in the construction of the fence, without stating in the lien as filed the facts upon which that item of his claim was based." This decision was determined upon the point that the material furnished, being for a fence, did not become an integral part of the building.

The present claim was disallowed as a lien claim against the proceeds of the sale of the real estate from the erroneous conclusion that apparently claimant and decedent considered that the original contract of Irwin W. Groff had been fulfilled as of March 30, 1940, and that the furnishing of the water meter by claimant was not included in the original contract. However, in reviewing the Mechanics' Lien Act we find that section 12 of the Act of 1901, 49 PS §54, provides as follows:

"If the labor or materials be furnished continuously in the erection and construction of, addition to, or removal of a structure or other improvement, the claimant may file a single claim, though furnished under more than one contract, with the same effect as if furnished continuously under a single contract. A single claim may be filed against more than one structure or other improvement, if they are all intended to form part of one plant."

In construing this section of the act in Schenone v. Bronk et al., 20 Westm. 212 (1936), the court held:

". . . if these contracts were entered into during the time within which the contractor could have filed a lien for any one of the contracts it kept his right to file a lien alive for six months, this being a new structure, of

the time the last labor and materials were furnished." It was also held that where a contract is entered into for plumbing work in a new building and later other separate contracts are entered into for additional work of the same nature on the same structure the contractor may file a single claim for the entire work.

In the instant case, while it appears that the furnishing and installation of the water meter was possibly not a part of the original contract (which does not appear to have been in writing, and no definite and precise testimony has been produced as to the exact terms of the contract), it does affirmatively appear that in the original installation of the plumbing system a provision was made for the subsequent attachment of a water meter. It may be said that it was in the contemplation of both claimant and decedent that a water meter was a necessary and essential part of the plumbing installation and a necessary requirement under the borough regulations, and the borough, according to the testimony, apparently insisted upon its installation. This is true whether the installation of the water meter was or was not a part of the original contract. At all events the deceased landowner ordered claimant to procure, supply, and install the water meter, thereby completing the plumbing system, which in the language of the act was intended to form a part of one plant. Following, therefore, section 12 of the act and the case above cited, this court was in error in not allowing the claim of Irwin W. Groff under the mechanic's lien claim as filed as a preferred claim out of the proceeds of the sale of the real estate. This exception must be sustained, and the claim will be allowed as a preferred claim against the proceeds of the sale of the real estate.

The charge appearing in the book account of $1.50 for the draining of the plumbing system will also be allowed as an administration expense.

V. Exception to the allowance of the claim of The Ewing-Thomas Corporation on a book account of $12,838.29 and the award of a dividend.

The exception to this claim is based on the contention that the same included charges not proven and charges for merchandise sold to other parties for which it is alleged decedent would be a surety and there existed no promise or contract of suretyship in writing.

As to the latter contention the testimony produced at the audit shows that decedent from time to time ordered this claimant to ship certain items of silk to two manufacturers (Schulz, Lind & Raab, and Mc-Kinley Hosiery Mills), who fabricated this silk into hosiery for decedent, who received the manufactured articles. In this course of business there was no suretyship involved on the part of decedent. There was a direct debtor-creditor relationship existing between decedent and claimant for the silk so delivered for the account of decedent to these manufacturers. This kind of commission knitting is a not unusual arrangement in the hosiery manufacturing business. But, of course, the money due under such an arrangement must be shown by competent testimony and satisfactory evidence. This brings us to the former contention by way of objection to the allowance of this claim, namely, that the claim included charges not properly proven.

At the audit, when testimony was being presented in support of the claim of The Ewing-Thomas Corporation, objecting counsel urged that the exhibits offered in support of the claim did not constitute books of original entry. A witness, Joseph B. Pope, described the bookkeeping system used by claimant generally, and in detail so far as its accounts with H. R. Baker were concerned. This witness, who was in charge of claimant's accounts, being no officer or stockholder of the corporation, was a competent witness. In support of each item included in claimant's book account against decedent this witness produced and identified the in-

voices, the packing room memoranda, and the bill of lading receipt from the railroad company or truck company or the express receipts, except that in three instances the express receipts were apparently lost and could not be produced, but paid express bills were produced therefor. It is the opinion of the auditing judge that the statements and accounts of this claimant, produced at the audit, as identified and explained by the witness, constituted what may be termed the "book of original entry" made in the regular course of business of claimant, at or near the time when the charges were made, and the sources of information and method and time of preparation were such as to justify the admission of these records in conformity with the Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, 28 PS §91a et seq.

On behalf of exceptants to the adjudication allowing this claim it was argued that no delivery of the items making up the book account had been shown. This argument is unavailable for the reason that each invoice was accompanied by evidence of delivery to a transportation company, and, in the opinion of the court, the accounts were self-sustaining and prima facie evidence of the sale and delivery of the articles and of their prices. See Clifford v. Hicks, 95 Pa. Superior Ct. 182 (1928).

In Molony v. Benners, 3 Grant 233 (1859), Mr. Justice Strong, delivering the opinion of the Supreme Court, said:

"There is no substantial difference between this case and *Koch v. Howell*, 6 W. & S. 350. Books of original entries are admissible to prove work done, or a sale and delivery of goods, from the necessities of trade, and on the principle that the entries are part of the '*res gestae.*' Such they are when made contemporaneously with the sale and delivery, or the work performed, being a brief statement of the transaction. They are not evidence of the delivery of goods sold alone, but also of the sale

and prices. The general rule is that they must have been made when the work was done or when the goods were delivered, because entries made at that time are made in the usual course of business. In some transactions, however, the sale and delivery or the work performed extends through a considerable period of time. In such cases, it has always been held essential that the entry should be made after or at the delivery, or after the work has been done. Thus, in *Kaughley v. Brewer*, 16 S. & R. 133, an entry made by a tailor after he had cut out the work and delivered it to his own journeyman to be done, was held admissible, though the work was not performed until after the entry was made. So in *Kein v. Rush*, 5 W. & S. 377, where an entry was made at the time when blooms were loaded upon the wagon of the plaintiff, to be delivered by his carter at a distance of twenty-one miles, it was held to be admissible, because the book was kept in the regular order of such transactions."

In Odell v. Culbert, 9 W. & S. 66 (1845), Mr. Justice Burnside, delivering the opinion of the Supreme Court, said (p. 67) :

"Taking this book in connection with the parol evidence given on the trial, we do not see that the plaintiffs in error have any just ground of complaint. The English rule, or more properly speaking, the rule of the Common Law, which admitted the party's own shop-book in proof of the delivery of goods therein charged, the entries having been made by a clerk when the books were kept for that purpose, and the entries made cotemporaneous with the delivery of the goods, and by the person whose duty it was for the time being to make them, never was rigidly adhered to in Pennsylvania, nor in any of the United States. *Greenl. Ev.* 137, 144. Hence we find in 1 *Dall.* 239, President Shippen says that here, from the necessity of the case, where business is often carried on by the principal, and many of our tradesmen do not keep clerks, the book proved

by the oath of the plaintiff himself has always been admitted. And in 1 *Yeates* 347, it was held that a day-book is *prima facie* evidence of the price of goods, as well as the sale and delivery. Judge Huston, in 16 *Serg. & Rawle* 133, says it is difficult to lay down any other rule than that such mode of keeping books as is usual and known to all tradesmen in the same business and all customers, cannot be safely declared bad by the court; and Judge Rogers, in 2 *Watts & Serg.* 20, that where due proof is made of the entries, the only inquiry on the point of admissibility of the book, is whether such facts are disclosed in respect to the delivery of the goods as destroy the right of the plaintiff to have the book submitted to the jury as *prima facie* evidence of the sale and delivery of the goods to the defendant; and Judge Kennedy, 1 *Watts & Serg.* 467, that where the books of original entry were kept (as in this case) in the form of a ledger, it would not prevent its admission in evidence to the jury."

As to proof of a book account in a claim against a decedent's estate, see also opinion of President Judge Holland in Barclay's Estate, 50 Montg. 81, McCrory v. Safier, 1 Fayette 17, White's Estate, 11 Phila. 100, Keener, Admr., v. Zartman, Admr., 144 Pa. 179, and Whalen's Estate, 17 Erie 51, to which reference hereinbefore was made.

The claim of The Ewing-Thomas Corporation for merchandise shipped to the Ephrata plant of decedent amounted to $11,577.67. The claim of The Ewing-Thomas Corporation also included three shipments of silk to Schulz, Lind & Raab, who were doing commission knitting for decedent, that is, making the legs of the stockings. These legs were shipped to decedent. Decedent appears to have paid Schulz, Lind & Raab for the knitting, but Mr. Baker owed The Ewing-Thomas Corporation for materials shipped for his account in the sum of $490.84. A similar arrangement was made with the McKinley Hosiery Mills, at Elkins Park, Pa.,

and the value of the goods shipped by The Ewing-Thomas Corporation to that concern for the account of Harold R. Baker amounted to $780.78. The claim of The Ewing-Thomas Corporation, therefore, is made up of the amounts due from Harold R. Baker for materials shipped to the Ephrata plant of decedent, for materials shipped to the Schulz, Lind & Raab Company for the account of Harold R. Baker, and for materials shipped to McKinley Hosiery Mills for the account of Harold R. Baker, making a total claim of The Ewing-Thomas Corporation against the estate of decedent in the sum of $12,828.29, which was properly allowed in the adjudication.

The exceptions filed to the allowance of this claim and the award of a dividend thereon are dismissed. . . .